**Matthew J. GALLO, individually and on behalf of all others similarly situated, Plaintiffs–Appellees,**

v.

**AMOCO CORPORATION, as Plan Administrator, and Employee Retirement Plan of Amoco Corporation and Participating Companies, Defendants–Appellants.**

No. 96–1518.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1996.

Decided Dec. 17, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 24, 1997.*

---

* Hon. Walter J. Cummings did not participate in the vote for rehearing en banc.

James R. Potter (argued), Miriam N. Geraghty, Jesse A. Wing, Kinoy, Taren, Geraghty & Potter, Chicago, IL, for Plaintiffs–Appellees.

Wilber H. Boies (argued), Nancy G. Ross, McDermott, Will & Emery, Chicago, IL, for Defendants–Appellants.

Before POSNER, Chief Judge, and WOOD, Jr., and CUDAHY, Circuit Judges.

POSNER, Chief Judge.

Amoco Corporation administers a defined-benefits retirement plan for its employees that is governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. A class action was brought on behalf of participants in the plan, charging that Amoco had violated ERISA by failing to compute benefits in accordance with the plan documents. The district judge agreed, granted summary judgment for the class, and ordered Amoco to recompute benefits for 18,000 retired employees. 910 F.Supp. 396 (N.D.Ill.1995). The recomputation could cost the plan as much as $125 million in additional benefits.

The annual retirement benefits of plan participants are computed according to three alternative formulas; whichever formula yields the highest benefits to the particular participant is the one used to determine his benefits. Under the Annuity Benefit Formula, the participant's average earnings in his highest-earning three years of employment by Amoco (normally his last three years) are multiplied by his total years of service, and by a fixed percentage, to yield (after further adjustments, irrelevant to this case) his annual pension. So, for example, if those average earnings were $75,000, the employee had 30 years of service, the percentage specified in the plan was 2 percent, and the irrelevant adjustments are ignored, the employee would be entitled to a pension of $45,000. The issue in this case is whether Amoco must include "pay in lieu of vacation" in determining earnings in the three base years under this formula.

An employee who, in his last year of employment with Amoco, does not take all the paid vacation that he is entitled to take in that year (without carryover of any vacation that he might have become entitled to but not taken in any previous year) receives a cash payment in lieu of that forgone vacation. The document that creates the retirement plan does not indicate whether this payment is to be included in determining the employee's earnings in the base period. The document defines "earnings" as including "wages" and certain other specified forms of compensation, including bonus, but Amoco claims without contradiction that there are more than a hundred elements of compensation and that many of these are not included in "earnings" within the meaning of the plan document even when they are deemed "wages" by the Internal Revenue Service. The summary plan description contains a more detailed specification of included and excluded elements (moving expenses and severance pay, for example, are excluded), but it does not mention payment in lieu of vacation either, and neither the document creating the plan nor the summary description sets forth criteria for classifying such payments. The plan dates back to 1939, and for as long as anyone can remember Amoco has not treated payments in lieu of vacation as earnings under the Annuity Benefit Formula. But this policy is nowhere stated. And in the administration of one of the alternative formulas, the Career Average Minimum Formula, in which benefits are based on the participant's total earnings over his entire period of employment by Amoco rather than on just his earnings in his highest-paid three years, Amoco does include such payments, even though the definition of "earnings" provided in the plan documents is the same under this formula as under the Annuity Benefit Formula. (The third formula doesn't use earnings.)

No one complained about the exclusion of payments in lieu of vacation from the determination of benefits under the Annuity Benefit Formula until 1993, when Mr. Gallo, one of the named plaintiffs, raised the issue. He

was told they were excluded. Pursuant to the plan's ERISA-required procedures for appealing an adverse determination of a claim to benefits, 29 U.S.C. § .1133(2); 29 C.F.R. § 2560.503–1(g), he appealed to Amoco's senior plan administrator, a Mr. Anderson, who upheld the refusal to include the payment in the computation. All Anderson said in his letter to Gallo was that, under the Annuity Benefit Formula, "earnings" do not include "post-retirement payments," such as payment in lieu of vacation; that this has been Amoco's consistent interpretation; and that the interpretation is necessary to avoid double counting. He did not further explain the grounds for the interpretation.

The plan confers upon the administrator—Amoco and, through Amoco, Anderson—discretion to interpret it. Therefore the issue for the district court was not whether Anderson's interpretation was correct but whether Amoco had abused its discretion, or, what amounts to the same thing, had acted arbitrarily and capriciously, in interpreting the plan documents to exclude vacation pay. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Petrilli v. Drechsel*, 94 F.3d 325, 329 (7th Cir.1996); *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1295–96 (7th Cir.1993). To give a plan administrator such power, when the administrator is the employer, may seem a case of putting the fox in charge of the henhouse. *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 n. 5 (3d Cir.1993). Although the employer cannot appropriate the plan's assets directly, the fewer the benefits paid out the likelier the plan is to become overfunded, in which case the employer can reduce his contributions; and if the plan is terminated, assets not required to satisfy the participants' claims can be recaptured by the employer. But that is not the whole picture. Retirement benefits are a valued component of total compensation, so that the employer who is tight-fisted in computing benefits, or who gets a reputation for unfairness in passing on claims, may find himself having to pay higher wages. *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir.1995); see generally Daniel Fischel & John H. Langbein,

"ERISA's Fundamental Contradiction: The Exclusive Benefit Rule," 55 U. Chi. L.Rev. 1105 (1988). No one is suggesting that Amoco is about to go out of business and is therefore indifferent to the effects on its reputation, and so on its employees' future demands for compensation, of dealing unfairly with claims of benefits. Of course, a loss of reputation might be a price worth paying to avoid $125 million in unanticipated expense.

 There is no need to go deeper into the question of the extent to which employers can be trusted to administer their retirement plans fairly. The question is not open for us. The standard of judicial review is clear: Amoco's denial of Gallo's claim can be set aside only if the denial was arbitrary and capricious. Because the plan documents are silent on the issue of treating payments in lieu of vacation as earnings and Anderson's response to Gallo was consistent with the administration of the plan since its inception (or at least as near to that inception as anyone can remember), we are perplexed by the district judge's ruling. Anderson's interpretation of the plan may be right or wrong; it was not unreasonable. It is true that Amoco treats payments in lieu of vacation as earnings under a different formula in the same plan. But as that formula, the Career Average *Minimum* Formula, is intended for lower-income employees who do not have a glorious "High 3" on which to base their pensions, Amoco's willingness to compute the earnings component of it more generously than under the Annuity Benefit Formula is understandable. Especially since the financial implications of such treatment are modest, because under the Career Average Minimum Formula the payments in lieu of vacation are in effect averaged over the employee's entire period of service, rather than just over three years as under the Annuity Benefit Formula. Amoco's experts testified, plausibly enough, that defined-benefits plans often exclude pay in lieu of vacation because its inclusion would create arbitrary and sometimes quite large differentials among otherwise similarly situated employees, which in turn could complicate the management of employees in their last year—none

of whom would want to take a vacation. Gallo estimates that if the payment he received in lieu of vacation in his last year is credited to his earnings for retirement purposes, it will increase the present value of his total benefits under the Annuity Benefit Formula by $40,000. Who would give that up for a vacation when the vacation to end vacations—retirement—is so imminent?

Since, moreover, the payments in question are (of course) in lieu of *paid* vacation, to count them as earnings is to count the earnings on the days on which the employee is entitled to vacation twice: once as part of his earnings in his "High 3" years, and the second time as an add-on to those earnings. This is the double counting to which Anderson alluded in his letter to Gallo. Alternatively, it is squeezing more than twelve months into the year. An employee who in his last year had coming to him but did not take two months of vacation would be asking to have his retirement benefits computed as if there were fourteen months in that year. And the fact that the employee who does not use all the vacation to which he is entitled is paid for it *only* in his last year of service gives the payments in lieu of vacation the aspect of severance pay, which is expressly excluded from earnings under the Annuity Benefit Formula.

■ These considerations do not prove that Amoco's interpretation of the plan is correct. Indeed, it is doubtful whether the terms "correct" and "incorrect" can be used to characterize answers to difficult interpretive questions presented by retirement plans. The details of such plans are inherently rather arbitrary, making recourse to purpose, the standard method of disambiguating documents, often futile. When as in this case the plan document does not furnish the answer to the question, the answer given by the plan administrator, when the plan vests him with discretion to interpret it, will ordinarily bind the court. That is implicit in the idea of deferential review of the plan administrator's interpretation.

■ Deferential review is not no review; deference need not be abject. Sometimes the structure of the plan or sheer common sense or inconsistent interpretations will provide the court with a handle for pronouncing the administrator's determination arbitrary and capricious. But not here. The reasons in favor of Anderson's determination are at least as strong as the reasons against. The "inconsistency" on which the plaintiffs harp—the fact that the same term in the plan, "earnings," is interpreted differently under two different formulas—is superficial. There may be no very satisfactory *principle* distinguishing the two interpretations, but no more than in a statute must the distinctions in a retirement plan be principled in the strong sense in which we think that judicial reasoning should be principled. There is no principle that generates a unique schedule of retirement benefits, just as there is no principle that dictates that the statute of limitations in a personal injury case should be two years rather than three years. *Hemmings v. Barian*, 822 F.2d 688, 689 (7th Cir.1987); *Hoctor v. U.S. Dept. of Agriculture*, 82 F.3d 165, 170 (7th Cir.1996). The two-year statute of limitations is not unreasonable just because it cannot be derived from a principle. The distinction in the treatment of pay in lieu of vacation under the two formulas is not unreasonable either. The effect of reading the word "earnings" more broadly in the Career Average Minimum Formula is to sweeten a formula that does not have a "High 3" sweetener, and, because the payments in lieu of vacation are averaged over more years of service, to do so without creating large disparities among employees otherwise similarly situated.

■ The district judge went astray by requiring that the plan administrator articulate the grounds for the interpretation in the course of reviewing an adverse determination on a claim for benefits, as if the plan administrator were an administrative agency. There is no such requirement in the law. The administrator must give the "specific reasons" for the denial, 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503–1(f)(1); *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 382 (7th Cir.1994), but that is not the same thing as the reasoning behind the reasons, in this case the interpretive process that generated the reason for the denial. The reason for the denial, as Anderson explained, was that the

plan as consistently interpreted by Amoco excludes payments in lieu of vacation from the computation of "earnings" under the Annuity Benefit Formula. That was sufficient explanation to enable Gallo to formulate his further challenge to the denial, the challenge that he has mounted in this suit, and as that is the purpose of requiring a statement of the plan administrator's reason for denying the benefits sought, *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir.1992), nothing more was required.

When challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality. He cannot augment the administrative record with new facts bearing upon the application for benefits (for example, new facts concerning the applicant's earnings or years of service), e.g., *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 394 (7th Cir.1983); *Voliva v. Seafarers Pension Plan*, 858 F.2d 195, 196 (4th Cir.1988), but he is not limited to repeating what he told the applicant. All he has to give the applicant is the reason for the denial of benefits; he does not have to explain to him why it is a *good* reason. To require that would turn plan administrators not just into arbitrators, for arbitrators are not usually required to justify their decisions, but into judges, who are. If the justification that the plan administrator offers in court is inconsistent with the reason that he gave the applicant, the justification will be undermined. *Halpin v. W.W. Grainger, Inc., supra*, 962 F.2d at 696; *Matuszak v. Torrington Co.*, 927 F.2d 320, 322 (7th Cir.1991). But there was no such inconsistency here.

And if there were a requirement that the denial contain a reasoned elaboration of its basis, this would not carry the day for Gallo and his class. The remedy when a court or agency fails to make adequate findings or to explain its grounds adequately is to send the case back to the tribunal for further findings or explanation. E.g., *FPC v. Texaco Inc.*, 417 U.S. 380, 395–96, 94 S.Ct. 2315, 2325–26, 41 L.Ed.2d 141 (1974). This is the appropriate remedy in an ERISA case just as in a conventional appeal, *Wolfe v. J.C. Penney Co., supra*, 710 F.2d at 393, unless the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground. *Weaver v. Phoenix Home Life Mutual Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993). It would be absurd to penalize Amoco $125 million because its vice-president for personnel wrote too short a letter to Mr. Gallo turning down his request. Nor can we see how the deficiencies of that letter could justify relief to an entire class. Had Anderson received 18,000 similar letters, he would have taken the time to articulate the grounds for his action more fully. In effect the judge, being dissatisfied with Anderson's articulation of the grounds for turning Gallo down, recast the case from judicial review of the plan administrator's determination under the deferential "arbitrary and capricious" standard to straight contract interpretation performed by the court de novo.

But these are details, for there is no basis for vacating the plan administrator's determination. Amoco's interpretation of the plan was not arbitrary and capricious, and that is all that matters. An administrator who fails to articulate his grounds runs the risk that a court will find that he has no grounds, but in this case, as we have explained, the grounds are both clear and plausible.

The judgment of the district court is reversed with directions to enter judgment for the defendants.

REVERSED.