Donna **SANTUCCI**, Plaintiff,

v.

**HYATT CORPORATION and The Prudential Insurance Company, Defendants.**

No. 95 C 3522.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 23, 1997.

Phillip Taxman, Phillip Taxman, Ltd., Chicago, IL, Robert P. Sheridan, Chicago, IL, for Donna Santucci.

Daniel A. Engel, Joseph J. Hasman, Peterson & Ross, Chicago, IL, Noelle Swanson Berg, Cook County State's Atty., Chicago, IL, for Hyatt Corp. and Prudential Ins. Co.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Donna Santucci has been diagnosed with chronic myelogenous leukemia. Leukemia is cancer of the blood. Chronic myelogenous leukemia is a slowly progressing cancer that affects granulocytes, which are white blood cells. Although an individual can live with this condition for many years, the disease will eventually reach the acute (or blast crisis) stage, in which immature granulocytes (or blast cells) are affected by the disease. Death usually follows shortly after the blast crisis.

Plaintiff, an employee of Hyatt Corporation, was a participant in the Hyatt Corporation Medical/Dental Plan, which was established and maintained pursuant to ERISA. Under the plan, Hyatt was designated as the plan administrator and, as administrator, was given "sole and exclusive discretion, authority and responsibility for administering, construing, and interpreting the provisions of the plan and making all determinations thereunder." Hyatt was further given authority to appoint an entity, here Prudential, to serve as the claim administrator with authority to review and pay claims. The plan excludes payment for "[c]harges that are not ... medically necessary." The words "medically necessary" were defined to exclude services that are "educational, experimental, or investigational in nature." Investigational procedures are considered experimental. "Experimental or investigational services" includes any services

> under study or in a clinical trial to evaluate its toxicity, safety or efficacy for a particular diagnosis or set of indications. Clinical trials include but are not limited to phase I, II and III clinical trials.

The Summary Plan Description, given to plaintiff and other Hyatt employees, contains language similar to that of the plan.

The plaintiff was initially treated with alpha interferon but she could not tolerate this treatment. She was then treated with an alternative drug therapy. She was a potential candidate for high dose chemotherapy with allogeneic stem cell rescue. This procedure involves killing the diseased bone marrow with high dose chemotherapy and replacing it with non-diseased marrow of a donor. However, allogeneic stem cell rescue requires a suitable match, usually from a sibling. Unfortunately, no suitable match was found for plaintiff.

Medical science has devised an alternative procedure known as high dose chemotherapy with autologous stem cell rescue. This procedure, designed for persons like plaintiff for which no suitable donor can be found, involves removal of her own peripheral blood

stem cells known as progenitor cells—cells that ultimately divide into red blood cells, white blood cells, and platelets—from her bone marrow, which at this stage would be disease free. The progenitor cells are frozen while the patient undergoes a similar cleansing procedure as in the allogeneic stem cell rescue. Afterwards the progenitor cells are thawed and reinfused. The hope is that the cells will regenerate the bone marrow that was destroyed by the chemotherapy. However, the efficacy of this procedure is at this point unknown.

It has been proposed that plaintiff receive autologous stem cell replacement at Northwestern University where she would be participating in a clinical or "research" trial. Her trial would be monitored by the hospital's Institutional Review Board, which is a federally mandated organization intended to protect the participants in clinical trials. Treatment must be in accord with a protocol approved by the board.

Clinical trials are divided into three phases. Phase I is designed to determine the largest tolerable dose of chemotherapy that can be tolerated without unacceptable toxic side affects. Phase II studies evaluate the safety and efficacy of the dosage determined in Phase I through a study of a group of similarly-situated patients. Phase III occurs if Phase II shows promise; it involves a random comparison of treatment results of patients receiving various types of treatment including the one under study. If at the conclusion the results equal or exceed alternative treatments, the procedure is approved and is no longer experimental.

One of the conditions for participation in the Northwestern study was that the patient be able to pay the cost, either through insurance or private funds. Accordingly, plaintiff made a claim under her insurance plan for pre-certification. Prudential, the claim administrator, denied pre-certification. In reviewing the claim Prudential obtained the opinions of two expert oncologists through the Medical Care Ombudsman Program, an independent organization owned by an attorney in Washington, D.C., named Grace Powers Monaco. Neither Prudential nor Hyatt had any role in selection of medical reviewers. One of the experts was Dr. Bruce D. Cheson, Chief of the National Cancer Institute's Medical Section, which supervises cancer research world-wide. He is a national and international authority in the treatment of leukemia. The other expert was Dr. Raymond B. Weiss. Dr. Weiss is board-certified in internal medicine and medical oncology and is Chief of Medical Oncology at Walter Reed Army Medical Center. He is a professor of medicine and has chaired groups involved in cancer and leukemia treatment. He has personally treated patients with the autologous stem cell rescue treatment proposed for plaintiff.

Both concluded in written reports prepared in April, 1995, that the treatment was not standard therapy and should only be performed in an investigational setting. They further concluded that, until randomized studies have been completed, no one can say whether the treatment is as good as or better than the alternative treatments available. Based on these reports, Prudential denied pre-certification.

In June, 1995, as a result of an appeal taken by the plaintiff under the Prudential insurance policy of Prudential's denial of pre-certification, each doctor was again asked for opinions and each reaffirmed his definite opinion that the procedure was indeed experimental. Prudential, on the basis of these opinions, denied plaintiff's appeal.

The court conducted an emergency hearing for a preliminary injunction in July, 1995. At that hearing the plaintiff called Dr. Patrick Stiff, Associate Professor of Medicine and Director of the Bone Marrow Transplantation Program at Loyola University Medical Center; Dr. Philip Barton McGlave, Chief of the Adult Bone Marrow Transplantation Program at the University of Minnesota; Dr. Donald Sweet, a hematologist/oncologist at Northwestern University, who practices privately in Hinsdale, Illinois; and Dr. Ann Elizabeth Traynor, an oncologist at Northwestern Memorial Hospital. Prudential called Dr. Weiss.

Three of the witnesses, Drs. Weiss, Stiff, and McGlave, agreed that the autologous stem cell rescue was experimental and should

not be performed outside of the clinical trial setting because of the need to evaluate the safety and efficacy of the procedure. Dr. Sweet quarreled with the definition of the term "experimental." He contended that to him the term meant a study involving animals. He contended that the procedure had been proven effective and was medically necessary in the plaintiff's case. Dr. Sweet's opinion had not been made available to Prudential in its decisional process.

The court denied the preliminary injunction on the ground that, in the court's opinion, the plaintiff had not established any likelihood of success on the merits because the decision of Prudential, based on the opinions of Drs. Cheson and Weiss, was obviously neither arbitrary nor capricious.

Subsequent to the hearing, plaintiff was accepted as a patient and was treated with the autologous stem cell rescue by Dr. Sweet. She contends in her brief that she remains liable for payment of this treatment.[1]

■ Since the defendants have been given discretionary authority to determine eligibility for benefits and to construe the policy, this court's review of their decisions is limited to a determination of whether their actions were arbitrary and capricious. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Although plaintiff in her brief alludes to a conflict of interest, by which she presumably means that Hyatt, and through Hyatt, Prudential, have an incentive to deny valid claims, this does not change the review standard. *Gallo v. Amoco Corp.,* 102 F.3d 918, 921 (7th Cir.1996). The question before the court is not whether the decision to deny the pre-certification was right or wrong, but whether it is reasonable.

■ Based on a review of the evidence introduced at the preliminary injunction hearing, the only evidence presented to Hyatt and Prudential were the letters of Drs. Chelson and Weiss. Both clearly opined that the procedure prescribed for plaintiff was experimental and was in the phase II clinical trial stage of determination. Although at the

hearing Dr. Small took issue with the definition of experimental, his opinion was not furnished to Prudential for consideration. The plan appeals process clearly gives an employee the right to supplement the appeal with supporting documentation. Plaintiff failed to do so. Thus, the evidence available to defendants was uncontradicted: the procedure was experimental and not covered by the policy.

Plaintiff has had over one year to conduct discovery. She apparently has been unable to uncover any evidence casting any reflection on the *bona fides* of Hyatt, Prudential, the Medical Care Ombudsman Program, Ms. Monaco, or Drs. Cheson and Weiss. Plaintiff's only argument in her favor is so lacking in merit it approaches a violation of Rule 11: it is premised on the assumption that the applicable provisions are ambiguous and, under ordinary contract law, must be construed against defendants. She cites *Phillips v. Lincoln Nat. Life Ins. Co.,* 978 F.2d 302 (7th Cir.1992). However, had plaintiff read this case she (or her lawyers) would see that it is completely inapplicable and in fact supports defendants. In discussing the standard of review, the Seventh Circuit starts out by citing *Firestone* for the proposition that a denial of benefits is to be reviewed under a *de novo* standard " *'unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'* " *Id.* at 307. Nowhere does plaintiff make any argument that Hyatt and Prudential did not have discretion under the plan to construe its terms.

In short, plaintiff offers no valid reason why the decision of Prudential was arbitrary and capricious so the court must grant defendants' motion for summary judgment.

Judgment entered in favor of the defendants and against the plaintiff.

**IT IS SO ORDERED.**

---

1. Plaintiff failed to file a Local Rule 12(n) statement setting forth this as a fact. Her failure to

do so would provide an alternative basis for granting the motion.