Maureen MARCINIAK, Plaintiff,

v.

The TRAVELERS INSURANCE, INC., Defendant.

No. 97 C 728.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 16, 1998.

Bruce Matthew Bozich, Mark Gerard Patricoski, Bozich and Beran, Palos Heights, IL, for Plaintiff.

Thomas James Piskorski, Susan F. Gallagher, Joshua Mark Henderson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

**1.** According to Travelers, the complaint incorrectly states the defendant's name as The Travelers Insurance, Inc.

**2.** Local District Rule 12(N) requires a concise response to each numbered paragraph in a movant's statement of facts including, in the case of denials, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." The Seventh Circuit has upheld the strict application of Rule 12(N). *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir.1992). Indeed, the Seventh Circuit recently found that "where [a] party has not followed the local rules requiring a response, supported by appropriate

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Maureen Marciniak, sued the defendant, The Travelers Insurance Company ("Travelers"),[1] under the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001 *et seq.* Ms. Marciniak argues that denial of her long-term disability ("LTD") benefits violates ERISA. Travelers moves for summary judgment. For the following reasons, Travelers' motion is granted.

### Background[2]

Ms. Marciniak worked for Travelers as a Senior Benefits Specialist from January, 1983, to October, 1990. She left Travelers due to continuing, severe pain in her right arm that prohibited her from performing her job. Ms. Marciniak was diagnosed with ulnar neuritis in her right arm and carpel tunnel syndrome in her left hand. She underwent surgery on her right arm in June, 1991, and in August, 1991, was cleared to return to work by Dr. John Sonnenberg, her treating physician. Ms. Marciniak was restricted from activities involving repetitive motion with her right hand. In October, 1991, Ms. Marciniak returned to Travelers on a full-time basis as a Customer Service Representative.

In January, 1992, Ms. Marciniak left Travelers, complaining of pain in both hands. She filed for LTD benefits under The Travelers Disability Income Plan ("Plan") in June, 1992. Travelers' Employee Benefits Committee ("EBC") serves as the Plan Administrator and makes determinations as to eligibility for LTD benefits. Ms. Marciniak began receiving LTD benefits in July, 1992. Under the Plan, a participant may receive

citations to the record, to each uncontested fact asserted in the movant's 12(M) statement, the moving party's facts remain uncontested." *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir.1997) (citation omitted). Ms. Marciniak failed to properly respond to Traveler's Rule 12(M) statement. She chose to submit her own set of uncontested facts without admitting or denying the facts presented by Traveler's Rule 12(M) statement. "[A] failure to properly contest in the 12(N) statement material facts set out in the movant's 12(M) statement, constitutes a binding admission of those facts." *Id.* Accordingly, Traveler's Rule 12(M) statement will be accepted as true.

LTD benefits if she can prove she suffers from a "total disability." A "total disability" is defined differently based on how long the participant has been disabled:

During the first 30 months of disability, you must be unable to perform the substantial and material duties of your regular occupation for any employer and may not work for pay or profit.

After 30 months of disability, you must be unable to engage in any occupation or employment for which you are or become qualified by training, education, or experience.

(Benefits Handbook at 63). Ms. Marciniak became disabled in January, 1992, and received benefits until July, 1994. At that time, Ms. Marciniak's continued benefits were dependent on her proving she was unable to "engage in any occupation" for which she was qualified. Traveler's EBC determined, based on medical and vocational reports, that Ms. Marciniak could engage in certain, sedentary employment. Ms. Marciniak's benefits were terminated in July, 1994. Ms. Marciniak appealed, twice, but the EBC upheld its earlier decision, finding Ms. Marciniak failed to prove she was incapable of performing any job. This suit followed.

### Long Term Disability Benefits

 Both parties agree that the EBC's decision to deny Ms. Marciniak LTD benefits should be reviewed under the arbitrary and capricious standard. *See Gallo v. Amoco Corp.,* 102 F.3d 918, 921 (7th Cir.1996) (finding that where a plan confers upon an administrator discretion to interpret it, challenges to the administrator's interpretations are to be reviewed under the arbitrary and capricious standard). Under the arbitrary and capricious standard, EBC's decision must be "based on a reasonable interpretation of [the Plan] and an adequate consideration of the relevant factual circumstances." *Russo v. Health, Welfare, & Pension Fund, Local 705, Int'l Bhd. of Teamsters,* 984 F.2d 762, 766 (7th Cir.1993); *accord Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990) (finding that for plan administrator to abuse discretion, interpretation must be "downright unreasonable").

 While the EBC's interpretation is entitled to great deference, review is still required. The EBC's decision will not stand if the EBC:

relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of [its] expertise.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In reviewing the EBC's decision, I may only consider the evidence before the EBC at the time of its determination. *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 n. 1 (7th Cir.1996).

The EBC was presented with considerable evidence that Ms. Marciniak was capable of working in some employment setting. In June, 1992, Ms. Marciniak's personal physician, Dr. Sonnenberg, recommended that she return to work in a job that avoided repetitive use of her right hand. (Def.Ex.G). Dr. Sonnenberg noted that Ms. Marciniak showed no signs of atrophy and had a full range of motion in her right hand. In August, 1992, Ms. Marciniak went through testing at Workers Rehabilitation Services, Inc., to determine whether her skills were transferable to another job setting. Based on a battery of tests and given the limitation on the use of her hands, Workers Rehabilitation concluded Ms. Marciniak qualified for a number of jobs, including charge account clerk, collection clerk, appointment clerk, and security guard. (Def.Ex.H).

In November, 1992, Ms. Marciniak was examined by Dr. Gerhold, a consultive physician, on behalf of the Social Security Administration. Dr. Gerhold diagnosed symptoms of carpal tunnel syndrome in the left hand and ulnar entrapment in the right hand, but found finger mobility was normal. (Def.Ex. I at 3). In January, 1993, Dr. Jerry Chow was retained by Travelers to perform an independent medical evaluation of Ms. Marciniak. Dr. Chow found Ms. Marciniak had a fifty-five pound grip strength in her right hand, a forty-five pound grip strength in her left hand, and full range of motion in the fingers

of both hands. (Def.Ex. C). Dr. Chow concluded Ms. Marciniak could only handle sedentary type of work, but that it was appropriate for her to find work that did not include fine motor skills and excessive, repetitive motion of her wrists. *Id.*

In early September, 1993, Ms. Marciniak underwent a series of physical tests at the Steps Industrial Rehabilitation Clinic. The Steps Clinic found Ms. Marciniak's performance indicated her physical capacities fell into the "sedentary-light work level." (Def.Ex.L). This determination was made although the therapist evaluating Ms. Marciniak noticed a number of inconsistencies in Ms. Marciniak's performance and questioned whether Ms. Marciniak was performing to her maximum ability. For instance, Ms. Marciniak complained of pain after typing for fourteen seconds, but did not complain of any pain while undergoing other tests requiring similar hand and finger movements for a longer duration of time. After considering Ms. Marciniak's performance at the Steps Clinic and her prior medical evaluations, Dr. Chow opined that Ms. Marciniak could only handle sedentary type work. (Def.Ex.K).

In January, 1994, Dr. David Frank, a vocational expert, testified before the Social Security Administration regarding Ms. Marciniak's employment options. Dr. Frank's testimony indicated that, even if Ms. Marciniak only had use of one arm, there were at least 57,000 unskilled jobs in the Chicago area for which she qualified, including cashier, telephone answerer, information clerk, and receptionist. Dr. Frank also noted there were 29,900 additional jobs, such as ticket takers and garage attendants, for which Ms. Marciniak would qualify. These estimates did not include jobs available to Ms. Marciniak if she could perform light work.

In February, 1994, Ms. Marciniak was evaluated by the Northwest Indiana Hand Therapy Associates. Ms. Marciniak went through tests to determine arm strength, range of motion, sensation and pain, and lift and carry ability. The therapist determined, based on Ms. Marciniak's "excellent range-of-

motion and her functional strength," that she had "significant potential to return to some type of productive work." (Def.Ex. F at 12). As before, the therapist testing Ms. Marciniak noticed inconsistencies in her performance. (Def.Ex. F at 11). Although Ms. Marciniak "easily removed" her jacket using normal hand movements, Ms. Marciniak became ultra-sensitive to pain when the therapist touched her hands.

Based on the above evidence, the EBC determined Ms. Marciniak failed to prove there was no employment for which she was qualified. Ms. Marciniak's LTD benefits ended in July, 1994.

Ms. Marciniak argues that the evidence indicates there exists no type of employment for which she is qualified. To this end, Ms. Marciniak has picked out particular quotes from doctors' reports which indicate her prognosis is guarded and that she should not participate in any work that involves repetitive motions of the wrist. Further, Ms. Marciniak argues the reports, taken as a whole, prove she is in constant pain which prohibits any type of employment. Ms. Marciniak's argument runs counter to the analysis of her personal doctor, two other consulting doctors, and two physical therapists, all of whom indicate Ms. Marciniak is capable of performing, at a minimum, sedentary work. While Ms. Marciniak argues she is incapable of doing household chores, she indicates in a Personal Profile Evaluation completed in January, 1994, that she does laundry, vacuuming, dusting, and dishes. (Def.Ex. B at 1).[3]

Even assuming the evidence could be interpreted to indicate Ms. Marciniak is without the use of her surgically repaired right hand, Dr. Frank testified there were at least 57,000 unskilled jobs that required the use of only one hand. Ms. Marciniak argues Dr. Frank was biased. But Dr. Frank was not making a medical evaluation of Ms. Marciniak; he was simply opining as to how many jobs existed in the Chicago area for individuals limited to the use of one hand.

Further, when Ms. Marciniak appealed the EBC's determination of her LTD benefits

---

3. Ms. Marciniak's admits she can lift fifteen to twenty pound weights for brief periods. (Pl. Brief at 13).

claim, she stated she "may be capable of some form of work," but complained Travelers had not found her proper employment.[4] The issue is not whether Ms. Marciniak can or has found an alternative job that she likes, but whether there exists any employment for which Ms. Marciniak is qualified. The evidence indicates such jobs exist.

*Conclusion*

Taking the evidence in the light most favorable to Ms. Marciniak, the EBC's decision was not arbitrary and capricious. The EBC's "decision should not be disturbed even if another reasonable, but different, interpretation may be made." *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 279 (7th Cir.1994). The EBC's decision was a reasonable interpretation of the evidence regarding Ms. Marciniak's physical ailments and her ability to find employment. Accordingly, Traveler's motion for summary judgment is granted.[5]

---

4. Under the Plan, it is not Travelers' duty to find Ms. Marciniak alternative employment.

5. Ms. Marciniak concedes that her state law claim for attorney's fees is preempted by ERISA. *See generally Gawrysh v. CNA Ins. Cos.*, 978 F.Supp. 790 (N.D.Ill.1997).