Thomas R. FINAZZI, Plaintiff,

v.

**PAUL REVERE LIFE INSURANCE COMPANY/UNUM PROVIDENT CORPORATION, Defendant.**

No. 1:01–CV–735.

United States District Court,
W.D. Michigan,
Southern Division.

March 19, 2004.

Martha E. Reamon, Reamon Fotieo Szczytko & Fedewa, PC, Grand Rapids, MI, for plaintiff.

K. Scott Hamilton, Dickinson Wright PLLC, Detroit, MI, for defendant.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This is an action for review of the defendant plan administrator's decision to terminate plaintiff's disability benefits under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1).[1] The matter has been once remanded to the plan administrator for evaluation of additional materials before issuance of its final decision. On November 27, 2002, the plan administrator issued its final decision, adhering to its original decision. The parties have filed supplemental briefs and presented oral arguments and the matter is ripe for adjudication. For the reasons that follow, the Court finds the plan administrator's decision arbitrary and capricious and will therefore order that plaintiff be awarded disability benefits under the plan.

## I. FACTUAL BACKGROUND

Plaintiff Thomas R. Finazzi was born on February 17, 1947. He began working for the Service Master Company as a regional manager in 1981. Plaintiff was working for Service Master as a survey engineer, when he became disabled from his occupation as of July 30, 1997, after suffering the last of three heart attacks in a seven-year period.

As a Service Master employee, plaintiff was a participant in an employee benefits plan that included disability income insurance afforded and administered by defendant Paul Revere Life Insurance Company ("Paul Revere"). Under the terms of the plan, plaintiff was paid total disability benefits from July 30, 1997 to March 28, 2001, because he was "unable to perform the duties of his own occupation on a full-time or part-time basis because of an injury or sickness." After his 36-month period of entitlement to "own occupation" benefits expired, plaintiff's benefits were terminated as Paul Revere determined that he had failed to show that "he cannot work in any occupation for which he is or may become suited by education, training or experience." That is, despite plaintiff's history of cardiomyopathy, coronary artery disease and congestive heart failure, and despite plaintiff's treating physician's opinion that he was totally disabled, Paul Revere determined that plaintiff retained the ability to perform sedentary or light work. Plaintiff appealed this decision and submitted additional information in support of his claim, but Paul Revere adhered to its original determination in a decision dated August 23, 2001.

This action followed. Plaintiff seeks recovery of benefits wrongfully denied under 29 U.S.C. § 1132(a)(1). Plaintiff's complaint calls for judicial review of Paul Revere's decision based on the administrative record and the parties' briefs. *See Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 618–20 (6th Cir.1998). At the time originally set for oral arguments, however, on May 13, 2002, counsel for the parties agreed that Paul Revere should be given the opportunity to evaluate additional submissions before rendering its "final" decision. The matter was therefore remanded to the plan administrator for reopening of the administrative record. Paul Revere considered additional information supportive of and adverse to plain-

---

1. Plaintiff's count II claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) was dismissed by order dated May 13, 2002.

tiff's claim. The final decision terminating benefits was issued November 27, 2002. Plaintiff remains unsatisfied. He contends Paul Revere has unreasonably disregarded the opinions of his long-term treating physicians in favor of opinions of medical consultants who never even examined him and merely reviewed medical records.

## II. STANDARD OF REVIEW

The parties essentially agree that the governing plan confers discretionary authority upon the plan administrator and that, therefore, Paul Revere's decision must be upheld unless it is shown to be arbitrary or capricious. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *McDonald v. Western–Southern Life Ins. Co.,* 347 F.3d 161, 168 (6th Cir.2003). Under this deferential "arbitrary and capricious" standard of review, the plan administrator's decision will be upheld if it is rational in light of the plan's provisions. *Id.* "Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (quoting *Williams v. Int'l Paper Co.,* 227 F.3d 706, 712 (6th Cir.2000)). Yet, "deferential review is not no review." *McDonald,* 347 F.3d at 172 (quoting *Hess v. Hartford Life & Accident Ins. Co.,* 274 F.3d 456, 461 (7th Cir.2001)). The Court is not obliged to "rubber stamp" the plan administrator's decision no matter how obscure or untrustworthy its reasoning. *Id.*

 Plaintiff urges the Court to recognize that Paul Revere's handling of his claim may have been influenced by a conflict of interest. Because Paul Revere both determines eligibility for benefits and is responsible for paying benefits, plaintiff contends Paul Revere's decision should be subject to closer scrutiny. Indeed, while such an apparent conflict does not alter the governing standard of review, it is to be considered as a factor in determining whether the decision was arbitrary or capricious. *Darland v. Fortis Benefits Ins. Co.,* 317 F.3d 516, 527–28 (6th Cir.2003), *overruled on other grounds, Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); *Borda v. Hardy, Lewis, Pollard & Page, P.C.,* 138 F.3d 1062, 1069 (6th Cir.1998).

## III. MEDICAL EVIDENCE

### A. Initial Final Decision, August 23, 2001

Plaintiff's claim for disability benefits has been consistently supported by his treating physician, cardiologist William F. LaPenna, M.D. Dr. LaPenna has treated plaintiff since 1992. In a letter dated April 17, 2001, summarizing plaintiff's history of heart problems (including a series of myocardial infarctions resulting in a "severe and debilitating condition of significant ischemic cardiomyopathy;" triple-vessel bypass surgery in 1990; implantation of a cardioverter defibrillator; ongoing problems with arrhythmias; periodic hospitalizations; and ongoing management with medical therapy), Dr. LaPenna advised Paul Revere that plaintiff "is totally disabled from routine work activities, as well as light or sedentary work," for an indefinite period of time. This assessment was corroborated by the April 16, 2001 letter of plaintiff's primary care physician of some 15 years, Michael T. Bodley, M.D., stating that plaintiff "is totally and permanently disabled from any and all work."

In denying plaintiff's claim on August 23, 2001, Paul Revere disregarded Drs. LaPenna's and Bodley's opinions, relying instead on the opinion of its own in-house cardiologist, Thomas Hashway, Jr., M.D., who reviewed plaintiff's medical records. In a note dated August 17, 2001, Dr. Hashway commented on findings made during plaintiff's hospitalization, for chest pain, on

May 23–25, 2001; noted discrepancies in plaintiff's ejection fraction measurement, ranging from 13% to 40%; observed that there was no new evidence of congestive heart failure, myocardial injury or ischemia; concluded there was no change in plaintiff's functional capacity; and relied on results of a September 22, 2000 treadmill test and a November 30, 2000 echocardiogram as demonstrating that plaintiff retained the ability to "pursue sedentary to occasional light exertional activity."

### B. Second Final Decision, November 27, 2002

On remand to the plan administrator for re-opening of the record, little new information was presented. Essentially, the parties used the opportunity to buttress and clarify their original positions. Plaintiff submitted the June 18, 2002 sworn statement of Dr. LaPenna. He reported that plaintiff had undergone a cardiac catheterization in December 2001, which showed that two of his three bypasses were occluded and that an angioplasty and stent intervention were required. Hence, despite a reasonably good oxygen consumption treadmill study, and control of plaintiff's arrhythmias through the defibrillator and medications, Dr. LaPenna believed that plaintiff's condition had not improved, but had weakened in the last year. Noting that cessation of work had had a remarkable stabilizing effect on him, Dr. LaPenna adhered to his opinion that there is no form of gainful employment in which plaintiff could safely participate. Any job, Dr. LaPenna observed, entails activities over which the employee does not have complete control, causing stress which, given plaintiff's debilitated condition and very limited reserve, could cause a heart attack. With reference to the clinical findings suggesting plaintiff is capable of light exertional activities, Dr. LaPenna maintained that plaintiff nonetheless lacks the endurance to work an eight-hour day. He summarized his statement as follows:

> This man is, he is lucky to be alive. He has skirted death several times. My recommendation to him is there is no way I would ever let him work. Absolutely not. Other people may feel differently. But he is my patient and I know him. I've got the time in to prove it. And I know him intimately well. He absolutely could not function in a work setting.

Sworn statement, June 18, 2002, p. 16.

Plaintiff also presented the July 9, 2002 sworn statement of Dr. Bodley. During 15 years of treatment, he had seen plaintiff deteriorate from a vigorous productive employee to one who suffers shortness of breath, sometimes even at rest. "He is a shell of what he used to be." Sworn statement, July 9, 2002, p. 8. Dr. Bodley estimated plaintiff's life expectancy at "just a matter of a few years, at best." *Id.* at 6. Because of his history of heart problems and his chronic shortness of breath at rest, Dr. Bodley stated that plaintiff is incapable of performing even sedentary work, even on a part-time basis.

Despite the opportunity to do so on remand, defendant Paul Revere refrained from referring plaintiff for an independent medical examination. This decision was ostensibly based on the August 15, 2002 remarks of Dr. Hashway:

> An IME may or may not be helpful. In my experience, IME's may give an opinion heavily weighted by the claimant's subjective complaints without necessarily questioning the possible secondary gain implied by those complaints; also, some IME's fear the risk of liability and therefore opine very conservatively to avoid that risk, even to the point of overlooking the objective functional testing in the file. Finally, IME's often do not translate exertional capacity into oc-

cupational capacity because this is not something with which they have any experience or knowledge. Therefore, I am not convinced an IME would clarify the situation.

Instead of an IME, Paul Revere sought the opinion of another in-house cardiologist and retained the consultant services of an independent cardiologist, who were both asked to review plaintiff's medical records and answer a series of questions. Based on review of the records, both Michael R. Geer, M.D., and Jeffrey A. Breall, M.D., agreed with Dr. Hashway that clinical findings support the conclusion that plaintiff should be able to perform sedentary or light work. In two-page reports dated October 6, 2002 and November 15, 2002, respectively, Drs. Geer and Breall both determined that plaintiff had shown some improvement since 1997 and appeared to be stable from a cardiac perspective. Both believed that plaintiff's symptoms of fatigue at rest could be attributable to one of the medications he had been taking. Both stated there is no evidence to support the notion that the stress of every day life will provoke episodes of congestive heart failure in plaintiff.

## IV. ANALYSIS

Can Paul Revere's decision to terminate disability benefits be deemed arbitrary and capricious when it is supported by the opinions of three board certified cardiologists? "Generally, when a plan administrator chooses to rely on the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald,* 347 F.3d at 169. This case presents an exception to the general rule.

■ In *Darland v. Fortis Benefits Ins. Co.,* 317 F.3d 516 (6th Cir.2003), the Sixth Circuit joined other circuits in adopting the "treating physician rule" in the ERISA context. That is, the Sixth Circuit held that treating physicians' opinions are entitled to deference absent substantial evidence in the record contradicting those opinions. *Id.* at 533. This does not mean that a treating physician's opinion trumps all other evidence; only that it must be given appropriate weight. *Id.* Applying the treating physician rule in this case would necessarily yield the conclusion that Paul Revere's termination of disability benefits was arbitrary and capricious. The Court would be constrained to find, consistent with the holding of *Darland,* that the opinions of three non-treating, non-examining medical consultants employed or hired by Paul Revere, opinions based solely on impressions formed after review of medical records, are not "substantial" when weighed against the contrary opinions of two physicians who had treated plaintiff for over 10 years.

However, in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003), just four months after *Darland* was decided, the Supreme Court expressly abrogated the authorities on which the Sixth Circuit had relied and held that special deference to the opinions of treating physicians is not *required* under ERISA. The Supreme Court recognized that treating physicians, as a rule, have a greater opportunity than consultants to know and observe the patient as an individual. *Id.* at 1971. The court also recognized that medical consultants hired by benefits plans have an incentive to make a finding of "not disabled" in order to save their employers money and preserve their own consulting arrangements. *Id.* Still, notwithstanding the legitimacy of such considerations, the court held that nothing in ERISA *requires* plan adminis-

trators to automatically or routinely accord special weight to the opinions of treating physicians. *Id.* at 1970–72. In other words, plan administrators are entitled to evaluate medical records without the stricture of a *per se* rule dictating how conflicting physicians' opinions should be weighed.

■ Yet, even without the benefit of the treating physician rule, the Court concludes, under the circumstances of this case, that Paul Revere's decision is an abuse of discretion. This conclusion is driven largely by the nature of plaintiff's disability. In short, to terminate disability benefits in the face of persistent opinions of two long-term treating physicians, one of whom is a board certified cardiologist, that plaintiff is not able to endure the stress even of sedentary work and that return to work may endanger his life, based exclusively on opinions of three board certified cardiologists, who never examined plaintiff, have not expressly challenged or criticized the opinions of the treating physicians, and who have stated merely that clinical findings demonstrate plaintiff should be able to perform the duties of sedentary or light work, without obtaining a single independent medical examination of plaintiff, is not a reasoned decision.

■ The Court recognizes that a plan administrator's failure to obtain an independent medical examination does not in itself render its decision arbitrary and capricious. *See Cunningham v. Paul Revere Life Ins. Co.,* 235 F.Supp.2d 746, 752 n. 5 (W.D.Mich.2002). Yet, the allegedly disabling condition in this case is not in the nature of persistent migraine headaches, or carpal tunnel syndrome or a herniated disc. It is rather a well-documented and undisputed history of serious coronary artery disease and congestive heart failure, deemed by two treating physicians to be debilitating and life-threatening. The treating physicians based their opinions on

the clinical findings, their personal observations and their long-term personal familiarity with the history and progress of plaintiff's condition. The medical consultants, on the other hand, had access only to the documented medical records and objective clinical findings, as to which there is no dispute. That is, the difference in medical judgment is not based on any disagreement as to what the clinical findings are or what they mean. The difference resides in the treating physicians' belief that plaintiff's current relatively stable condition is fragile; that, despite plaintiff's relatively good treadmill test results and ejection fraction measurements, he cannot be expected to endure ongoing work-related stress without jeopardizing his health. Their sworn statements make it clear that this assessment is based on their personal observations over time.

None of the medical consultants directly challenged or criticized this assessment or the integrity of the treaters' opinions. Rather, they merely answered the questions posed to them based on the information made available to them—accurate, but incomplete information. It follows that their opinions are handicapped and less reliable. The information available to them would have been more complete and their opinions commensurately more reliable if they had personally examined plaintiff. Had they concluded that plaintiff is able to perform sedentary or light work after examining him, then their opinions might be characterized as "substantial" evidence contradicting the contrary opinions of the treaters. Under all the extant circumstances, however, especially considering the gravity of the potential consequences of error, the consultants' opinions can only be deemed insubstantial, an insufficient basis to disregard the treating physicians' opinions. Plaintiff's treating physicians' opinions are not automatically entitled to deference, but under the cir-

cumstances of this case, they must be accorded greater weight than those of the non-examining consultants.

Moreover, Paul Revere's failure to obtain an independent medical examination when the matter was remanded, despite ample opportunity and apparent need to do so, reflects the possible influence of its conflict of interest. Paul Revere appears to have relied on Dr. Hashway's remark that he was "not convinced that an IME would clarify the situation." By this, Dr. Hashway did not mean to suggest that more information would not provide a clearer or more accurate picture of plaintiff's actual condition. Rather, he implied that an IME opinion of total disability might actually be accurate, but might also suffer from one or more of three infirmities: (1) the examiner may be influenced by the claimant's subjective complaints without questioning his credibility; (2) the examiner may overlook objective functional testing and opine conservatively to avoid liability; and (3) the examiner may not be familiar with translating exertional capacity into occupational capacity. Instead of employing safeguards to prevent or minimize these potential weaknesses, Paul Revere chose to simply avoid the risk altogether by declining to obtain an IME. Paul Revere thus deliberately refrained from gathering information which Dr. Hashway conceded *may* have been helpful to an accurate assessment of plaintiff's condition. To the extent Paul Revere's processing of the claim may have been designed to support denial rather than to make an accurate assessment of plaintiff's eligibility under the plan, Paul Revere's dual role may have interfered with its exercise of discretion and impacted its decision. This is a factor, at least, which the Court cannot ignore in reviewing Paul Revere's decision. *Darland,* 317 F.3d at 528.

## V. CONCLUSION

Deferential review is not no review; the Court is not obliged to "rubber stamp" Paul Revere's termination of benefits where, considering all the evidence, its reasoning is not trustworthy. In the opinion of the Court, for the reasons discussed above, Paul Revere's disregard of the treating physicians' opinions was not reasonable. It's determination that plaintiff is not totally disabled is not supported by the opinion of any physician who actually examined him. *See Darland,* 317 F.3d at 528 (noting that denial of benefits is subject to reversal where plan administrator ignored evidence of treating physicians supporting disability). Paul Revere unreasonably accorded undue weight to the opinions of non-examining medical consultants which it hired. The Sixth Circuit's summary of its ruling in *Darland* is perfectly apt in this case as well.

> [W]here there is such a stark dichotomy between the opinions of the treating physicians who possessed an abundance of first-hand knowledge of the patient's medical condition and those of the non-treating medical consultants who were hired by a company selected by [ ] the plan administrator, which had a financial stake in the matter as the insurer who ultimately pays the benefits, ... [the claimant] would be entitled to prevail on an abuse of discretion standard even without the invocation of the treating physician rule.

*Id.* at 533. *See also McDonald,* 347 F.3d at 170–72 (affirming district court's reversal of denial of disability benefits as arbitrary and capricious); *Hoover v. Provident Life and Accident Ins. Co.,* 290 F.3d 801, 809 (6th Cir.2002) (affirming reversal of denial of benefits under *de novo* review where only non-examining physicians hired by plan administrator disagreed with treating physicians). This reasoning is all

the more compelling in this case where, in contrast with *Darland,* involving degenerative disc disease, plaintiff's disabling condition is potentially life-threatening.

Accordingly, the Court concludes that Paul Revere's denial of continuing disability benefits is not supported by substantial evidence, is arbitrary and capricious, and must be reversed. Plaintiff is entitled to judgment in his favor and is entitled to reinstatement of disability benefits and award of all benefits past due. A judgment order consistent with this opinion shall issue forthwith.