Sarah DONATIELLO, Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,
Defendant.

No. CIV. 03–74417.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 4, 2004.

Gary C. Berger, Berger, Miller, Detroit, MI, for Plaintiff.

Michael A. Alaimo, Detroit, MI, Michael A. Alaimo, Dickinson Wright, Bloomfield Hills, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff brings an action against Defendant to recover disability income insurance benefits after Defendant's claim representative denied benefits. Defendant moved for Judgment on the Administrative Record in Defendant's favor. Plaintiff opposes this motion and made its own Motion for Reversal of Denial of Claim for Long–Term Disability Benefits. For the reasons below, I:

- GRANT Defendant's Motion for Judgment on the Administrative Record in Defendant's favor; and

- DENY Plaintiff's Motion for Reversal of Denial of Claim for Long–Term Disability Benefits.

## I. FACTUAL BACKGROUND

Plaintiff, Sarah Donatiello (f/k/a Sarah Wines) ("Donatiello"), brings an action against Defendant, Hartford Life and Accident Insurance Company ("Hartford"), to recover disability income insurance benefits under her former employer's long term-disability benefits plan which was funded by a Hartford Long Term Disability Policy ("LTD Policy"). (Def. Mot. for J. on Admin. R. at 1.)

In 1987, Plaintiff began to work as a controller for a California company called AHD, Inc.. *Id.* at 3 citing Admin. Rec. at 962. In 1988, Plaintiff filed a disability claim alleging that she was unable to work because she had been diagnosed with Crohn's Disease. *Id.* at 3 citing Admin. Rec. at 963, 195, and 248. Plaintiff's attending physicians, Dr. Hanandjian and Dr. David Cooley ("Dr.Cooley") provided statements that supported Plaintiff's claim. *Id.* at 3 citing Admin. Rec. at 960–61, 835, 848. Hartford began to pay LTD benefits to Plaintiff on this claim. *Id.* at 1. Hartford granted benefits to Plaintiff because Plaintiff established, to Hartford's satisfaction, that she was unable to perform the duties of her own occupation. *Id.*

In 1989, Plaintiff began to work part-time for Thermal Electron Corporation ("TEC"). *Id.* at 3 citing Admin. Rec. at 847. Dr. Cooley limited Plaintiff to working part-time at TEC, and Hartford approved Plaintiff's part-time employment as "rehabilitation employment" and offset her benefits accordingly. *Id.* at 3 citing Admin. Rec. at 908.

On July 15, 1989, Plaintiff was hospitalized for her Crohn's disease. *Id.* at 3 citing Admin. Rec. at 835. On September 8, 1989, Dr. Cooley notified Hartford that Plaintiff was indefinitely disabled. *Id.* at 4. Plaintiff claims that her condition caused her to miss too much work and as a result she left TEC. *Id.* at 4 citing Admin. Rec. at 625.

After Plaintiff left TEC she applied for social security disability benefits. *Id.* at 4. The Social Security Administration denied Plaintiff's claim and she appealed the denial. *Id.* On appeal, the Social Security Administration then granted Plaintiff's claim for benefits. *Id.*

On January 1, 1991, Plaintiff established, to Hartford's satisfaction, that she was unable to perform the duties of any occupation for which she was qualified by reason of her education training or experience. *Id.* at 4. Dr. Cooley again supported Plaintiff's claim. *Id.* at 5 citing Admin. Rec. at 712, 732–33. Hartford began to pay LTD benefits to Plaintiff on this "any occupation" claim. *Id.* at 4 citing Admin. Rec. at 700, 712–13, 732–33.

Thereafter, Hartford periodically requested that Plaintiff's attending physicians provide Hartford documents confirming Plaintiff's continued disability. *Id.* at 5 citing Admin. Rec. at 713. Hartford also periodically interviewed Plaintiff regarding her continued disability. *Id.* at 5 citing Admin. Rec. at 685–88.

In February of 2001, Plaintiff was injured in a car accident when she sustained a cervical sprain and contusion on her left shoulder. *Id.* at 5 citing Admin. Rec. at 295. Plaintiff received treatment for her shoulder. *Id.* citing Admin. Rec. at 375–76.

In June of 2002, Defendant reviewed Plaintiff's claim file and decided to obtain more information regarding Plaintiff's

medical condition. *Id.* citing Admin. Rec. at 247. Defendant's claim representative reviewed Plaintiff's file and the additional information and determined that Plaintiff was no longer "disabled" as that term is defined in the LTD policy. *Id.* at 9. Defendant sent a letter (dated March 27, 2003) to Plaintiff, stating that Hartford was terminating LTD benefit payments to Plaintiff. *Id.* at 9 citing Admin. Rec. at 4–7. Hartford's claims representative, Deborah E. Fadden, stated:

> [ . . . ]Dr. Lyons summarized that you retain the capacity for full-time sedentary and full-time light demand employment, as your Crohn's disease and diabetes are stable. Based on your left shoulder symptoms and previous right shoulder surgery, Dr. Lyons had the opinion that you should not lift greater than 20 pounds and you should avoid overhead work. Dr. Lyons stated that the medical evidence did not suggest any other restriction or limitations were needed, regrarding your functional capabilities. [ . . . ] Therefore, you no longer meet the definition of disability as defined in your contract and no further benefits are payable to you under the plan.

Admin. Rec. at 6. Hartford also informed Plaintiff that she had a right to appeal Hartford's claim representative's decision. (Def. Mot. for J. on Admin. R. at 6.)

Plaintiff hired counsel and then, on June 30, 2003, Plaintiff appealed Hartford's determination to terminate benefits. (Pl.'s Mot. for Reversal of Denial at 11); (Def. Mot. for J. on Admin. R. at 10.) In her appeal Plaintiff claims that Hartford should continue to pay her benefits because her condition due to Crohn's disease has not changed, and she also suffers from a shoulder injury. (Def. Mot. for J. on Admin. R. at 11.) citing Admin. Rec. at 259. Dr. David Mitchell ("Dr.Mitchell") and Dr. Robert A. Teitge ("Dr.Teitge")

each performed a separate Independent Medical Examination ("IME") of Plaintiff confined to Plaintiff's claim of a left-shoulder injury. *Id.* at 11 citing Admin. Rec. at 261–267, 261–68.

Plaintiff submitted these examinations to Defendant for Defendant's review of her claim. *Id.* at 11. After Hartford reviewed all this information Hartford denied Plaintiff's appeal. *Id.* Defendant's claims representative, Corey M. Welch, stated (in a letter dated August 19, 2003), "Because the medical evidence supports only a slight loss of function in her left shoulder, we find that the additional evidence that you submitted does not alter our consulting physician's opinion that light work is medically acceptable for Ms. Donatiello." Admin. Rec. at 2–3. On October 1, 2003, Plaintiff filed this action. *Id.* at 12.

## II. ANALYSIS

### A. *ERISA Benefits Action*

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* governs employee welfare benefit plans. Plaintiff's insurance policies were established and maintained by Plaintiff's employer, therefore they are employee welfare plans covered by ERISA. (Notice of Removal at 2).

The Sixth Circuit set out procedural guidelines to resolve ERISA governed benefits actions in *Wilkins v. Baptist Mem'l Healthcare Services, Inc.,* 150 F.3d 609 (6th Cir.1998). The guidelines require a court determine the applicable standard of review based upon the policy language (either arbitrary and capricious, or de novo); and (2) determine, based only upon the material in the Administrative Record whether Defendant's administrative decision should be affirmed under the applicable standard. *Id.* at 613, 615.

## B. Standard of Review

■■■ A court should apply a de novo standard when reviewing a denial of benefits claim, "unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where a plan "expressly grants the administrator discretionary authority to determine eligibility for benefits" a court shall "review the administrator's decision to deny benefits using 'the highly deferential arbitrary and capricious standard of review.'" *Killian v. Healthsource Provident Adm'rs Inc.,* 152 F.3d 514, 520 (6th Cir.1998) (citation omitted).

Both parties stipulated that the policy language requires that this Court apply an arbitrary and capricious standard of review. (Def. Mot. for J. on Admin. R. Ex. 1.) Therefore, this Court should apply the arbitrary and capricious standard of review to Donatiello's denial of benefits claim.

### 1. Conflict of Interest

Plaintiff asserts that there is a conflict of interest affecting the plan's operation, and the court should weigh the conflict of interest as a factor in determining if the decision to deny benefits was arbitrary or capricious. (Pl.'s Mot. for Reversal of Denial at 11); *See Firestone Tire & Rubber Co.,* 489 U.S. at 115, 109 S.Ct. 948. Plaintiff explains that, "[1] Hartford bore all the financial risk of playing [sic] claims and [2] was also the entity that appointed the fiduciaries who decided the claim." (Pl.'s Mot. for Reversal of Denial at 11). Plaintiff cites *Univ. Hosps. v. Emerson Elec. Co.* for the proposition that "where an employer bears all or most of the financial risk of paying claims and also appoints the fiduciaries who decide claims ... 'the potential for self-interested decision making is evident.'" 202 F.3d 839, 846 n. 4 (6th Cir. 2000).

In *Univ. Hosps.* the employer's board of directors appointed the plan's administrative review body. 202 F.3d at 846. In Donatiello's case, Defendant is not Plaintiff's employer, and therefore, unlike *Univ. Hosps.,* there is no conflict of interest present.

■■■ Additionally, Plaintiff does not prove that Defendant was motivated by a conflict of interest, because Plaintiff points to nothing in the administrative record to suggest that Defendant was influenced by its financial interest in denying benefits. "There must be some evidence in the administrative record to suggest that Defendants' decision was motivated or influenced by its financial interest in minimizing Plan payments...." *Monks v. Keystone Powdered Metal Co.,* 78 F.Supp.2d 647, 664 (E.D.Mich.2000). Defendant's financial stake in benefit determinations alone is not sufficient to suggest a conflict of interest. *Id.*

Therefore, this Court applies the arbitrary and capricious standard to review this claim, and not a more searching standard of review, because Plaintiff does not present evidence that Defendant had a conflict of interest.

## C. Arbitrary or Capricious Decision

The Sixth Circuit stated that a court applying the arbitrary and capricious standard "must decide whether the administrator's decision was rational in light of the plan's provisions." *Williams v. Int'l Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000). This standard requires the "least demanding form of judicial review of administrative action." *Id.* In my opinion, Defendant's decision was supported by the

evidence in the administrative record and was rational in light of plan's provisions.

Plaintiff claims that Defendant arbitrarily or capriciously denied benefits to Plaintiff because Hartford does not have a release from any doctor that states that Plaintiff can return to her job. (Pl.'s Mot. for Reversal of Denial at 11). However, Plaintiff bears the burden of proof that she has a continuing disability.

### D. Plaintiff Bears the Burden of Proof for Continuing Disability

■ The plan places the burden of proving continued disability on the insured. The plan states, "Written proof of loss must be sent to The Hartford within 90 days after the start of the period for which The Hartford owes payment." (Admin. Rec. at 28.) "After that, The Hartford may require further written proof that you are still disabled." *Id.* "The Hartford reserves the right to determine if proof of loss is satisfactory." *Id.*

In *Miller v. Metro. Life Ins. Co.,* the Sixth Circuit construed a similar provision to mean that the insured bears the burden of proving continued disability. 925 F.2d 979, 984 (6th Cir.1991). The language of the plan in *Miller* stated that "[O]n demand from the Insurance Company[,] further satisfactory proof, in writing, must be submitted to the Insurance Company that the disability continues." *Id.* at 980. The Sixth Circuit held that due to this type of language, "it is the employee who must continue to supply on demand proof of continuing disability to the satisfaction of the insurance company." *Id.* at 985.

■ Although Plaintiff does not explicitly say so, her argument implies that it is up to Hartford to prove that she is no longer disabled in order to terminate her benefits. However, this argument is incorrect. The plan language clearly states that it is the insured's obligation to submit proofs of total disability. The plan further defines "Totally Disabled":

(1) during the Elimination period; and

(2) for the next 24 months,

you are prevented by Disability from doing all the material and substantial duties of your own occupation on a full-time basis.

After that, and for as long as you remain Totally Disabled, you are prevented by Disability from doing any occupation or work for which you are or could become qualified by:

(1) training;

(2) education; or

(3) experience.

Admin. Rec. at 17. Therefore, I must determine whether plaintiff has met her burden of proving that she cannot perform any occupation for which she is qualified by training, education or experience. I find that Plaintiff fails to meet her burden of showing that she is unable to perform the duties of any occupation for which she was qualified by training, education or experience.

### E. Plaintiff's Evidence of her Continuing Disability

Plaintiff directs this Court to evidence that Plaintiff believes Defendant overlooked to demonstrate that she is disabled. Plaintiff claims: (1) Defendant ignored Dr. Cooley's statement that he did not know if Plaintiff would be able to return to work (Pl.'s Mot. for Reversal of Denial at 12 citing Admin. Rec. at 296); (2) Defendant relies on Dr. Lyon's analysis that Plaintiff is able to return to work although he never saw or spoke to Plaintiff about her condition; and (3) Defendant failed to conduct an IME or consider Plaintiff's IMEs' results. *Id.* at 12.

## 1. Dr. Cooley's Statement

Plaintiff claims that Defendant, in reaching its decision to terminate Plaintiff's benefits, inappropriately ignored Dr. Cooley's statement that "he did not know if Plaintiff would be able to return to work." (Pl.'s Mot. for Reversal of Denial at 12) citing Admin. Rec. at 296. However, Dr. Cooley's statement only refers to Plaintiff's shoulder injury. (Admin. Rec. at 296.) According to the Administrative Record, Dr. Cooley believed that Plaintiff's Crohn's disease and diabetes "were currently conditions that were stable and not affecting her work capacity for sedentary or light demand work." *Id.*

Defendant did not arbitrarily or capriciously ignore Dr. Cooley's statement which exhibits hesitancy to permit Plaintiff to return to work. Dr. Cooley's statement lacked certainty, therefore, Hartford appropriately considered other opinions to determine if Plaintiff could return to work. (Admin. Rec. at 298.) Defendant reviewed the opinions of Drs. Lyon, Mitchell and Teitge. (Admin. Rec. at 298; Def. Mot. for J. on Admin. R. at 11.) These other opinions (further discussed below in sections 2 and 3) provide support for Hartford's denial of Plaintiff's claim for benefits as a result of injuries to her shoulder.

## 2. Dr. Lyon's Analysis

■ Plaintiff asserts that Defendant's reliance on Dr. Lyon's opinion is inappropriate because: (1) Dr. Lyon never saw or spoke to Plaintiff and (2) Dr. Lyon did not "take into account the symptoms and aggravations of Plaintiff's Crohn's disease." (Def. Mot. for J. on Admin. R. at 12 citing Admin. Rec. at 298.)

Plaintiff does not provide adequate support for her proposition that Defendant can only rely on a doctor's opinion if the opinion was based on the doctor's personal interaction with the patient. Plaintiff cites *Finazzi v. Paul Revere Life Ins. Co./ UNUM Provident Corp.,* which states that a medical consultant's opinion would be more complete and reliable if that medical consultant personally examined the patient. 327 F.Supp.2d 790 (W.D.Mich. 2004). However, the *Finazzi* case does not support Plaintiff's argument. That court generally permitted claim representatives to rely on a doctor's opinion even if the doctor had not personally examined the patient. *Id.* That court found the claim representative inappropriately based his decision on a consultant's opinion because of that case's particular circumstances.[1] Plaintiff does not demonstrate that any of those special circumstances are present in this case.

Plaintiff also claims that Defendant should not have relied on Dr. Lyon's findings because Dr. Lyon failed to "take into account the symptoms and aggravations of Plaintiff's Crohn's disease." (Def. Mot. for J. on Admin. R. at 12 citing Admin. Rec. at 298.) Plaintiff's evidence does not support her assertion. Dr. Lyon considered Plaintiff's Crohn's disease throughout his medical report and based his conclusion on Plaintiff's treating physician's statements and findings. (Admin. Rec. at 293–298.)

Defendant's claim representative may rely on Dr. Lyon's opinion even though the doctor did not personally examine Plaintiff. Dr. Lyon's opinion was based upon Plaintiff's treating physician's statements and findings and the opinion considered Plaintiff's Crohn's disease. Therefore, Defen-

---

1. Those circumstances included: the particular disability; the treating physicians' opinions challenged the benefits termination; and the contested opinions did not challenge or criticize the treating physicians' opinions. *Finazzi v. Paul Revere Life Ins. Co./UNUM Provident Corp.,* 327 F.Supp.2d 790, 795 (W.D.Mich.2004).

dant's claim representative's placement of any reliance on Dr. Lyon's report was not inappropriate.

### 3. Independent Medical Examination

Plaintiff contends that Defendant acted arbitrarily or capriciously when Defendant failed to conduct an IME or consider Plaintiff's IMEs' results. (Pl.'s Mot. for Reversal of Denial at 12.) Plaintiff states that (1) Defendant should have obtained an IME and (2) not canceled the IME that Defendant previously scheduled. *Id.* Furthermore, Plaintiff states that (3) Defendant did not provide a "full and fair review" to Drs. Mitchell and Teitge's IMEs. *Id.* at 13.

#### a. IME Requirement

■ Plaintiff claims that Defendant should have obtained an IME, and that Defendant, to the contrary, canceled the scheduled IME. *Id.* at 12. Plaintiff cites *Finazzi* for the proposition that an insurance company's failure to obtain an IME, despite opportunity and apparent need to do so, exhibits a possible influence of a conflict of interest. 327 F.Supp.2d 790, 795 (W.D.Mich.2004).

Plaintiff disregards that the *Finazzi* court recognized the general proposition that "a plan administrator's failure to obtain an independent medical examination does not in itself render this decision arbitrary and capricious." No. 327 F.Supp.2d at 795; citing *Cunningham v. Paul Revere Life Ins. Co.*, 235 F.Supp.2d 746, 752 n. 5 (W.D.Mich.2002). In *Finazzi* the defendant provided guiding questions to the consultants and the consultants' conclusions did not discount the credibility of plaintiff's treating physicians' opinions. 327 F.Supp.2d at 795–96. Therefore, the court found that the defendant's medical opinions were "handicapped and less reliable." *Id.*

The present case is not similar to the situation in *Finazzi*. As stated in section (2) above, Dr. Lyon's opinion is reliable. *See supra.* Dr. Lyon's opinion is based on the conclusions of Dr. Cooley, Plaintiff's treating physician. (Admin. Rec. at 293–298.) Additionally, Plaintiff does not allege that Defendant provided guiding questions to Dr. Lyon.

#### b. Cancellation of IME

■ Plaintiff also implies that this Court should interpret Defendant's cancellation of an IME as evidence of Defendant's conflict of interest. (Pl.'s Mot. for Reversal of Denial at 12.) However, Defendant did try to obtain an IME, but Plaintiff's failed to show up at the appointment. (Def.'s Br. in Opp'n to Pl.'s Mot. at 9 n. 6 citing Admin. Rec. at 333.) Defendant scheduled Plaintiff's IME for January 2, 2003 with Dr. James Swetech. *Id.* Plaintiff failed to attend the IME and Dr. Swetech refused to reschedule another IME. *Id.* citing Admin. Rec. at 36. Defendant scheduled an IME with another doctor, but canceled the appointment after Defendant determined that it had obtained sufficient medical information regarding Plaintiff's condition. *Id.*

#### c. Full and Fair Review of Plaintiff's IMEs

■ Plaintiff asserts that Defendant did not provide a "full and fair review" to Drs. Mitchell and Teitge's IMEs. Drs. Mitchell and Teitge's IMEs evaluate only Plaintiff's shoulder problems and not Plaintiff's Crohn's disease. (Admin. Rec. at 261–268.) Plaintiff presents Dr. Mitchell's IME for Plaintiff's own conclusion that "Clearly, if Plaintiff were employed then this shoulder injury would affect her work." (Pl.'s Mot. for Reversal of Denial at 13.) Dr. Mitchell does not make this statement and this is not a logical conclu-

sion given Dr. Mitchell's findings. Dr. Mitchell's findings support a conclusion that Plaintiff could return to work with some initial limitations. (Admin. Rec. at 266.) Dr. Mitchell concludes:

> [I]n view of the apparently negative MRI and x-ray results, I cannot see the likelihood of great rewards coming from exploratory surgery. The problem, whatever it is, I expect will settle down in time. But at the moment, in spite of representing a problem that does give her ongoing discomfort, I do not find that her everyday activities are particularly affected by it. Although she does not feel that she can reach or lift with the left arm as comfortably or as well as she can on the right, for most activity she does not need to. She does not work outside of the home.

*Id.* Defendant also states that Plaintiff should return to an accommodating workplace if possible given that, "[E]mployers are required to accommodate employees who have disabilities such as Crohn's disease." In light of Dr. Mitchell's IME conclusion, Defendant's claim representative's decision to terminate disability benefits was not arbitrary or capricious.

Plaintiff also claims that Defendant did not give a "full and fair review" to Dr. Teitge's IME. (Pl.'s Mot. for Reversal of Denial at 13.) Defendant correctly asserts that Dr. Teitge's short IME provides little support for Plaintiff's claim that she is unable to perform the duties of any occupation for which she is qualified. (Def.'s Br. in Opp'n to Pl.'s Mot. at 5.) Dr. Teitge stated that "MRI is consistent with a torn rotator cuff." (Admin. Rec. at 268.) However, Dr. Teitge does not diagnose Plaintiff's injury as a torn rotator cuff. Furthermore, Dr. Teitge does not limit Plaintiff's activities. Therefore, Defendant could have reasonably interpreted Dr. Teitge's IME to permit Plaintiff to perform the duties of an occupation for which she is qualified.

Plaintiff does not demonstrate that Defendant acted arbitrarily or capriciously when Defendant failed to conduct an IME, because Plaintiff failed to attend a scheduled IME. Plaintiff also fails to prove that Defendant arbitrarily or capriciously reviewed Plaintiff's IMEs' results because Drs. Mitchell and Teitge's IMEs do not lend support to Plaintiff's contention that she is unable to perform the duties of an occupation for which she is qualified.

## III. CONCLUSION

Plaintiff fails to demonstrate that Defendant's claims administrator acted arbitrarily or capriciously when Defendant terminated disability benefit payments to Plaintiff. Plaintiff failed to demonstrate any of its contentions support a different conclusion. (1) Defendant did not ignore Dr. Cooley's statements; (2) Defendant's reliance on Dr. Lyon's analysis was appropriate; and (3) Defendant's failure to conduct its own IME was justified and Defendant adequately reviewed Plaintiff's IMEs' results. Thus, I:

- GRANT Defendant's Motion for Judgment on the Administrative Record in Defendant's favor; and

- DENY Plaintiff's Motion for Reversal of Denial of Claim for Long–Term Disability Benefits.

**IT IS SO ORDERED.**